IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL THOMAS (B-65390), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 C 8718 |
| v. ) | |
| ) | Judge Rebecca R. Pallmeyer |
| MICHAEL STUDER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Thomas, an inmate at Stateville Correctional Center has sued Stateville administrators/staff Michael Studer, Jeremia Daly, and Randy Pfister ("IDOC Defendants") and Dr. Martija and Wexford Health Sources, Inc. ("Medical Defendants") under 42 U.S.C. § 1983. Plaintiff alleges that IDOC Defendants subjected him to unconstitutional conditions of confinement and that the Medical Defendants were deliberately indifferent to his serious medical needs. Service was unexecuted on Dr. Martija [57]. Wexford has moved for summary judgment on Plaintiff's claim that Wexford has a policy and practice of preventing prisoners from learning of any serious medical conditions that could be costly to treat. The IDOC Defendants have also moved for summary judgment on Plaintiff's unconstitutional conditions of confinement claim. For the reasons explained here, Wexford's motion [75] is granted, but the IDOC Defendants' motion [86] is denied.

## FACTS

Defendants have submitted a Statement of Uncontested Material Facts as required by the court's Local Rules [78, 89]. Because Plaintiff is proceeding pro se, Defendants have provided him with the notice required by this court's Local Rule 56.2 [77, 88], which explains the significance of a summary judgment motion and provides instructions for responding to such a motion. The court construes Plaintiff's submissions in response to the as favorably as the record and Local Rule 56.1 permit, drawing inferences in his favor to the extent he has pointed to

any admissible evidence in the record or to which he could properly testify himself. *See Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014); *Sistrunk v. Khan*, 931 F. Supp.2d 849, 854 (N.D. Ill. 2013); FED. R. EVID. 602.

Plaintiff is in the custody of the Illinois Department of Corrections and is housed at Stateville. (Defendant Wexford's Rule 56.1 Statement [78] ¶ 1; IDOC Defendants' Rule 56.1 Statement [89] ¶ 1.) Defendant Randy Pfister was the warden at Stateville during all relevant time periods. ([78] ¶ 2; [89] ¶ 2.) Defendants Michael Studer and Jeremiah Daly were also Stateville employees at all relevant time periods. ([78] ¶¶ 3-4; [89] ¶ 3.) Defendant Dr. Martija was a physician at Stateville employed by Wexford Health Sources, Inc., a corporation that provides health care services to certain IDOC facilities including Stateville. ([78] ¶¶ 5, 6.) IDOC has a contract with Critter Ridder, Inc., to provide extermination services on a weekly basis at Stateville. (*Id.* ¶ 10.)

The facts relevant to Plaintiff's deliberate indifference claim are as follows: Plaintiff was seen by Dr. Martija on April 30, 2015. ([78] ¶ 32.) At that visit, Plaintiff requested an HIV test; he was tested for HIV on May 13, 2015 and the May 20, 2015 results showed he was negative for HIV. (*Id.* ¶¶ 32-33.) Notes of his next visit with Dr. Martija, on May 28, 2015, show the negative test results for HIV and also note Plaintiff's request for hepatitis testing. (*Id.* ¶ 34.) In a test performed on June 5, 2015, Plaintiff tested positive for hepatitis A and B, and negative for hepatis C. (*Id.* ¶ 35.) Between September 2015 and February 2016, Plaintiff requested copies of his medical records at least three times. (*Id.* ¶ 36.) On November 15, 2015, Plaintiff received five pages of his medical records consisting of lab work from May to November 2015. (*Id.*)

Plaintiff disagrees with the medical treatment he received at Stateville (he believes it "could have been a lot better") but admits that he was given medications, was examined, and was given medical permits that he requested. (*Id.* ¶ 39, citing Plaintiff's Deposition, Exhibit C to Wexford's Rule 56.1 Statement, at 69:3-71:11.) Plaintiff's blood was drawn at least 28 times for

various medical tests between 2012 and 2017. (*Id*. ¶ 40.) Plaintiff was seen by medical providers at least 45 times from 2014 to 2016. (*Id*. at ¶ 42.)

The facts relevant to Plaintiff's conditions of confinement claim rest on Plaintiff's own allegations, which the IDOC Defendants have admitted for purposes of their motion for summary judgment. In his amended complaint, Plaintiff alleged that the living conditions at Stateville included birds, vermin, and spiders in the inmate living units; fecal matter throughout the living units; and the presence of black mold. (Amended Complaint [31] at page 6.) He alleges, further, that "groundhogs and skunks" are "mixing with prisoners." (*Id*.; [89] ¶ 6.) In addition, Plaintiff alleged the water in Stateville was not fit to drink and that the water and unsanitary conditions caused him to suffer digestive problems, fatigue, fever, and chills. ([31] at page 7; [89] ¶¶ 7-9.) Plaintiff believes that he caught a stomach infection from the living conditions at Stateville. (*Id*. ¶ 41.) He admits that he does not know when or where he got the stomach infection but points out that he has resided at Stateville since 2004. (Plaintiff's Response [92] ¶ 14.) Plaintiff contends Dr. Obaisi (the deceased medical director) told him that the stomach infection resulted from the conditions at the prison. (*Id.* ¶ 15.) And, though he also admits no doctor told him that the water at Stateville made him sick, Plaintiff asserts that he "knows about memos telling officers not to drink the water," and observed "every officer with water bottles or jugs daily." (*Id.* ¶ 16, citing Plaintiff's Dep. at 94:9-20.)

## DISCUSSION

Plaintiff brings a conditions-of-confinement claim against the IDOC Defendants and a deliberate indifference to serious medical claim against Wexford.

**Conditions of Confinement Claim**

The Eighth Amendment imposes a duty to "provide humane conditions of confinement" and "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rice ex rel. Rice v.*

3

*Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012). Determining whether this constitutional right is violated calls for a two-fold analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities"; and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks and citation omitted). "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.*

The IDOC Defendants argue that Plaintiff has not demonstrated sufficiently serious conditions to implicate constitutional concerns by depriving inmates of the minimal civilized measure of life's necessities. "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)). To implicate the Eighth Amendment, a condition must create a serious risk to an inmate's health or safety, create a sufficiently high probability of harm, or be sufficiently prolonged so as to cause significant pain or discomfort. *Leslie v. Doyle*, 125 F.3d 1132, 1137 7th Cir. 1997); *Thomas v. Ill.*, 697 F.3d 612, 615 (7th Cir. 2012). Even when an individual condition of confinement is not serious enough to violate the Constitution, conditions may cumulatively do so "when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013).

In moving for summary judgment, Defendants accept Plaintiff's own allegations as their statement of facts—including his descriptions of birds and vermin in the inmate living units, fecal matter throughout the living units, and the presence of spiders, groundhogs, skunks, and black mold. These alleged facts. Defendants contend, do not establish a violation of the Constitution. (IDOC Defendants' Memorandum [87] at 5 ("While Plaintiff alleges the presence of bird, vermin,

spiders, groundhogs, and skunks, this is insufficient to establish an Eighth Amendment violation claim.").) To the contrary, this court has little difficulty in concluding that those allegations state a claim. "[A] prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation" of constitutional magnitude. *See Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). "Depending on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner is known to have . . ., and how long the infestation continues, a trier of fact might conclude that the prisoner had been subjected to harm sufficient to support a claim of cruel and unusual punishment." *Thomas*, 697 F.3d at 614; *see also DeSpain v. Uphoff,* 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment."); *Riley El v. Godinez*, No. 13 C 5768, 2016 WL 4505038, at *6 (N.D. Ill. Aug. 29, 2016) (citing *Carroll*, 255 F.3d at 472) ("[D]eliberately supplying inmates with water containing carcinogens and contaminants can be considered cruel and unusual punishment."). The IDOC Defendants' adoption of Plaintiff's allegations as true preclude a judgment in their favor on this claim. Even if some of the conditions Plaintiff has alleged are not individually serious enough to constitute independent constitutional violations, a reasonable jury could find that these conditions, when combined, deprive Plaintiff of the minimal civilized measures of life's necessities—i.e., that Plaintiff was deprived of sufficiently sanitary conditions.

IDOC Defendants believe they are nevertheless entitled to summary judgment because Plaintiff did not suffer a physical injury caused by the adverse conditions. Again, however, the court disagrees. First, Plaintiff did allege fatigue, fever, and a stomach infection, and Defendants rely on these allegations in support of their proposed statement of fact No. 9. ([89] ¶ 9.) In any event, the Seventh Circuit has rejected the assumption that there is no violation of the Eighth

Amendment unless the plaintiff has suffered a disease or other resulting harm. *See Thomas*, 697 F.3d at 614; *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016)(prisoner suffering only psychological injuries may be entitled to nominal or punitive damages unconstitutional conditions of confinement) (citation omitted); *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (citing the direction in *Thomas*, 697 F.3d at 615-16, that the court should "treat psychological and probabilistic harm from infested prisons as seriously as realized physical harm"). *Bentz v. Hardy*, 638 Fed. Appx. 535, 538 (7th Cir. 2016) (noting that a jury might find an Eighth Amendment violation without showing of physical harm from pests, based upon "the extent, duration, and kind of infestation an inmate was made to endure.").

Lastly, the IDOC Defendants argue that they are entitled to summary judgment because they did not have sufficient personal involvement in the conditions and because IDOC has a contract with an exterminator. Defendants are correct that Plaintiff's claim requires a showing that Defendants were actually aware of the unacceptable conditions but failed to take adequate steps to address them: "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded the risk by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773. The inmate must show more than mere negligence; he must show "that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Id*.

In support of their argument that this test is not met, Defendants rely selectively on Plaintiff's deposition testimony. For example, Defendants note Plaintiff's testimony that he named Warden Pfister as a Defendant only because Pfister is the man in charge. (IDOC Defendants' Memorandum [87] at 7; IDOC Defendants' 561. Statement [89] ¶ 18, citingPlaintiff's Dep. at 93:6-10). Plaintiff also testified, however, that he spoke with Warden Pfister and Warden Pfister informed Plaintiff that he was "working on it" (Plaintiff's Dep. at 92:20-93:103: 20-5)—

evidence that Pfister was personally aware and took responsibility for the conditions. Plaintiff testified, albeit vaguely, about statements from Defendants Studer and Daly that they were "working on fixing all of this" as well. (*Id.* at 93:19-94:5; 95:4-15.) Stateville's contract with an extermination service is relevant, but it does not by itself establish that the service was so effective that the rodent and insect infestation did not rise to the level of a constitutional violation. *See Bentz*, 638 Fed. Appx. at 537 (evidence of a pest control contract that provided monthly spraying did not exculpate the defendants because an ineffective method of pest control may be evidence of deliberate indifference; evidence of ineffectiveness included allegations that cockroach infestation was constant).

Based on the foregoing, genuine issues of material fact exist as to whether the Defendants acted with deliberate indifference.

**Deliberate Indifference to a Serious Medical Need**

Plaintiff has also asserted a claim that Defendant Wexford has a policy and practice of preventing prisoners from learning of any serious medical conditions that could be costly to treat.

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state a claim based on deliberate indifference, an inmate must first show that "his medical condition is 'objectively, sufficiently serious.'" *Greeno*, 414 F.3d at 652 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). He must then show that prison officials were deliberately indifferent to that condition. *Id.* (quoting *Farmer*, 511 U.S. at 834) (citation and quotation marks omitted). The concept of deliberate indifference encompasses the refusal of effective treatment, *Fields v. Smith*, 653 F.3d 550, 556 (7th Cir. 2011); knowing delay of treatment to the point that an injury is exacerbated or pain is unnecessarily prolonged, *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); and erroneous treatment based on a substantial departure from accepted

medical judgment, practice, or standards, *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016). It should be noted, however, that neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Estelle*, 429 U.S. at 106; *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Likewise, inmates are not constitutionally entitled either to "demand specific care" or even to receive the "best care possible." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

Wexford, a private corporation performing essential government service under contract with the state, can be held liable under § 1983 only if it itself maintained "an unconstitutional policy or custom" that caused a plaintiff's injury. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789-92 (7th Cir. 2014); *see also Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997)). The policy need not be an actual written policy and may be demonstrated with evidence of a widespread practice that is so permanent and well-settled as to constitute a custom or policy. *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012). A plaintiff "can meet this burden by offering 'competent evidence tending to show a general pattern of repeated behavior (i.e., something greater than a mere isolated event).'" *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016) (quoting *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006)). Such a pattern requires more than a showing of "deficiencies specific to [the plaintiff's] own experience" but must instead rest on "evidence that could allow a reasonable trier of fact to find . . . 'systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical system'," which the policy maker or official was aware of but failed to correct. *Id.* at 734-35 (citations omitted).

In this case, the claim rests on Wexford's purported policy of concealing inmates' test result in order to avoid the obligation of providing treatment. To establish a practice or policy, Plaintiff relies on his allegation that he had to request his medical records at least three times before receiving the medical records and that Dr. Martija failed to provide the test results to him

orally. By failing to address the question of whether Plaintiff's positive hepatitis tests constitute a serious medical issue, the court assumes Wexford has conceded that issue. The absence of any evidence relating to the alleged delay in providing Plaintiff with his test results and necessary medical care creates a genuine issue of material fact as to whether the delays constituted deliberate indifference. Indeed, Wexford does not argue otherwise, instead urging that this claim fails for absence of any evidence that the delays are intentional efforts to spare Wexford the expense of further care.

The court concludes that Plaintiff's personal circumstances regarding his test results demonstrate only potential "deficiencies specific to [Plaintiff's] own experience," rather than a widespread custom or practice attributable to Wexford itself. *See Daniel*, 833 F.3d at 734; *Arlotta v. Bradley Center*, 349 F.3d 517, 522 (7th Cir. 2003) (proof of a single incident is generally considered insufficient to establish a claim of municipal liability).[1] Plaintiff did ultimately receive the medical tests that he sought and has only demonstrated that he personally suffered a delay in getting those results. Because the record does not establish a widespread policy or practice, Plaintiff has failed to establish deliberate indifference as to Wexford as a matter of law.

---

[1] Plaintiff also cites the "*Lippert* report," *see Lippert v. Godinez*, 10 C 4603, Dkt. 339 (N.D. Ill. May 19, 2015) for his claim that Wexford has a policy of not informing inmates about their medical test results. That report has been held inadmissible for the truth of its findings. *See Mathis v. Carter*, No. 13 C 8024, 2017 WL 56631, at *4-5 (N.D. Ill. Jan. 5, 2017) (holding that *Lippert* report did not meet public records hearsay exception public records); *Diaz v. Chandler*, No. 14 C 50047, 2016 WL 1073103, at *12 (N.D. Ill. Mar. 18, 2016) (declining to take judicial notice of *Lippert* report); *see also Daniel v. Cook County*, 833 F.3d 728, 743 (7th Cir. 2016) (holding that Department of Justice report was admissible, but that the *Lippert* report, though "crafted with care for the court and parties based on scheduled visits to [Cook County] jail," was properly excluded); *see also Abascal v. Fleckenstein*, 820 F.3d 561, 563, 566-67 (2nd Cir. 2016) (holding that prison monitoring report by "independent non-profit organization that advocates for a more humane and effective criminal justice system" did not fall within hearsay exception and that district court's admission of report was not harmless error).

Accordingly, Plaintiff has failed to demonstrate a genuine issue of material fact exists as to whether Wexford has a policy of not informing inmates their test results to avoid future medical care.

## CONCLUSION

For the reasons stated in this opinion, the IDOC Defendants' motion for summary judgment [86] is denied, and Wexford's motion for summary judgment [75] is granted. Wexford remains in the case for the sole purpose of assisting in service of the amended complaint on Defendant Dr. Martija. A status hearing is scheduled by telephone for Thursday, November 8, 2018 at 8:30 a.m., the call to be initiated by defense counsel from counsel's office. The court will expect counsel for Wexford to inform the court whether it waives service as to Dr. Martija.[2] The parties are encouraged to discuss the possibility of settlement.

ENTER:

Date: October 17, 2018

REBECCA R. PALLMEYER
United States District Judge

---

[2] Service was unexecuted on Dr. Martija who is no longer is employed at Stateville [57]. The court notes, however, that Dr. Martija has recently been served in other later-filed cases, *i.e, Harrison v. Wexford*, 18 C 0893, and is represented by the same counsel as Wexford.